UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIMBERLY BRYAN O/B/O L.J.P.,

                                        Plaintiff,

                                                        5:16-cv-00987
v.                                                      (TWD)

COMM'R OF SOC. SEC.,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.             DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Kimberly Bryan

("Plaintiff") on behalf of her daughter L.J.P. ("Claimant" or "L.J.P.") against the Commissioner

of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 14, 16.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the

pleadings is granted.  The Commissioner's decision denying Claimant disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Overview

L.J.P., the child for whom Plaintiff brings this action, was born in 2006, making her 4 years old at her alleged onset date and 10 years old at the date of the final Social Security Administration ("SSA") decision.  (T. 20.[1])  Generally, Plaintiff alleges L.J.P. suffers from dyslexia, Attention Deficit Disorder ("ADD"), and bipolar disorder.  (T. 106; Dkt. No. 14 at 3.[2]) At all relevant times L.J.P. was, and currently is, a school-age child.  20 C.F.R. § 416.926a(g)(2)(iv).  L.J.P. is enrolled in the Syracuse City School District (the "school" or "SCSD").  (T. 256-88, 308-17, 433-641.)

### B.     Procedural Background

On June 23, 2013, Plaintiff protectively filed an application for Social Security Income ("SSI") benefits under the Social Security Act on behalf of her daughter L.J.P., who was 8 years old at the time of the hearing.  (T. 20.)  Plaintiff alleges L.J.P. has suffered from dyslexia, ADD, and bipolar disorder since October 1, 2010.  (Dkt. No. 14 at 3.)

Plaintiff's application for SSI benefits was denied on September 4, 2013.  (T. 93-100.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 108-10.) On January 14, 2015, both Plaintiff and Claimant appeared before ALJ Jennifer G. Smith.  (T.

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system.

49.)  On February 19, 2015, the ALJ issued a written decision finding L.J.P. was not disabled

under the Social Security Act.  (T. 20-34.)  On June 16, 2016, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

(T. 1-3.)  Plaintiff commenced this action on August 9, 2016.  (Dkt. No. 1.)

      **C.**        **The ALJ's Decision**

Generally, in her decision, the ALJ applied the three-step sequential evaluation process to

determine whether an individual under the age of eighteen is disabled.  (T. 20-34.)  The ALJ

made the following findings of fact and conclusions of law.  *Id*.

Initially, the ALJ noted L.J.P. was born in 2006, and was therefore a school-age child on

the date her application was filed and at the time of her decision.  (T. 23.)  At step one, the ALJ

found Claimant has not engaged in substantial economic activity at any time relevant to her

decision.  *Id*.  At step two, the ALJ found Claimant had the following severe impairments:

speech delays, Oppositional Defiant Disorder ("ODD"), mild intellectual disability, a learning

disability in reading and math, and Attention Deficit Hyperactivity Disorder ("ADHD").  (T. 23-

24.)  At step three, the ALJ found that L.J.P.'s impairments did not meet or medically equal any

impairments in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"), including 112.02

(neurocognitive disorder), 112.04 (depressive, bipolar and related disorders), 112.05 (intellectual

disorder), or 112.11 (neurodevelopmental disorder), and that her impairments were not

functionally equivalent to any listed impairment.  (T. 24-33.)  In making this determination, the

ALJ considered Claimant's functioning in terms of the six domains: (i) acquiring and using

information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv)

moving about and manipulating objects; (v) caring for herself; and (iv) and health and physical

well-being.  *Id*.  Specifically, the ALJ found that L.J.P. had a marked limitation in acquiring and

using information, and a less than marked limitation in the other five domains.  *Id*.  The ALJ

therefore concluded that L.J.P. was not disabled.  (T. 34.)

### D.     The Parties Briefing on Their Cross-Motions

Generally, Plaintiff asserts a singular argument in support of her motion for judgment on

the pleadings.  (*See generally* Dkt. No. 14.)  Plaintiff argues that the ALJ's decision that

Claimant's impairments are not functionally equivalent to the Listings is unsupported by

substantial evidence.  *Id*. at 19.  More specifically, Plaintiff argues the ALJ failed to provide

adequate reasoning for her findings in the domains of (i) acquiring and using information and (ii)

attending and completing tasks.  *Id*.  Plaintiff asserts that Claimant has an extreme limitation in

the domain of acquiring and using information and, therefore, meets the Listings.  *Id*. at 19-23.

In the alternative, Plaintiff contends that Claimant has marked limitations in the two domains of

acquiring and using information, and attending and completing tasks and, therefore, meets the

Listings.  *Id*. at 19-25.

The ALJ found that Claimant has a marked limitation in acquiring and using information.

(T. 28.)  Plaintiff, however, argues Claimant has at least a marked, if not extreme limitation in

this domain.  (Dkt. No. 14 at 19-23.)  Plaintiff argues the record evidence shows Claimant's

limitation in this domain is extreme and, therefore, L.J.P. functionally meets the Listings for

childhood disability.  *Id.* at 19-20.  To support her argument, Plaintiff relies heavily upon

Claimant's education level and the opinion of L.J.P.'s third grade teacher, Lori S. Clark ("Ms.

Clark").  *Id*. at 20-23; *see* T. 320-26.  Plaintiff argues Ms. Clark's opinion, to which the ALJ

accorded significant weight (*see* T. 27), is consistent with the definition of an extreme limitation

as defined by 20 C.F.R. § 416.926a(e).  (Dkt. No. 14 at 21.)  Plaintiff argues the ALJ did not give

sufficient weight to Claimant's inability to read, her grade level being three to four years behind

that of similarly aged peers, and her lack of understanding of addition and subtraction. *Id.* at 20-21. According to Plaintiff, these factors indicate an extreme rather than marked limitation. *Id.* at 21. Plaintiff also argues the ALJ failed to consider an administered intelligence evaluation given by consultative examiner Jeanne Shapiro, Ph.D., in 2013, and failed to properly use the "whole child" approach mandated by 20 C.F.R. § 416.926a(e) and SSR 09-01p. *Id.* at 21-23.

In the alternative, Plaintiff argues Claimant has at least a marked limitation in attending and completing tasks. *Id.* at 19; 23-25. Here, Plaintiff again relies on the opinion of Ms. Clark to support this argument. *Id.* at 23-24. Specifically, Plaintiff relies on Ms. Clark's opinion that Claimant has a "very serious problem" refocusing to tasks when necessary and a "serious problem" paying attention when spoken to directly and with completing homework assignments. *Id.* at 24; *see* T. 321. Plaintiff also asserts that the ALJ failed to consider Claimant's ability to pay attention in a variety of settings, and instead focused only on Claimant's ability to pay attention in a one-on-one setting. *Id.* at 24.

Plaintiff also challenges the weight given by the ALJ to the opinion of non-examining reviewing consultants L. Blackwell, Ph.D., and R. Gauthier, M.D., compared to that of Ms. Clark. *Id.* at 25.

Defendant asserts two arguments in support of her motion for judgment on the pleadings. (*See generally* Dkt. No. 16.) In response to Plaintiff's argument, Defendant generally argues that the ALJ's determination was supported by substantial evidence. *Id.* at 7-18. More specifically, Defendant first asserts there was substantial evidence supporting the ALJ's determination that L.J.P. had a marked but not extreme limitation in the domain of acquiring and using information. *Id.* at 7. In support of this argument, Defendant argues the ALJ properly used the whole child approach, considering evidence from Dr. Shapiro, Ms. Clark, Dr. Blackwell, and L.J.P.'s 2014-

2015 individualized education program ("IEP").  *Id.* at 9-13.  Defendant argues that the ALJ evaluated and weighed the record evidence before making her determination, and that her determination was supported by such consideration.  *Id.* at 13.

In response to Plaintiff's argument that the ALJ failed to consider the results of the 2013 intelligence evaluation administered by Dr. Shapiro, Defendant asserts that such a claim is patently false.  *Id*. at 14.  In support of her position, Defendant cites to the ALJ's written decision and her discussion of Dr. Shapiro's findings therein.  *Id*.  Lastly, with regard to acquiring and using information, Defendant argues that Plaintiff has failed to establish how the evidence in the record supports a finding of an extreme rather than marked limitation.  *Id.*

As to Plaintiff's alternative argument, Defendant argues substantial evidence supports the ALJ's determination that Claimant had a "less than marked" limitation in the domain of attending and completing tasks.  *Id.* at 14.  Again Defendant emphasizes the ALJ's reliance on Dr. Shapiro's consultative examination, Dr. Blackwell's opinions, and L.J.P's 2014-2015 IEP. Defendant contends such reliance demonstrated that the ALJ had substantial evidence to support her determination.  *Id*.

Defendant argues that the ALJ's reliance on Ms. Clark's opinion was consistent with the ALJ's determination as the ALJ considered all of the relevant record evidence.  *Id*.  In response to Plaintiff's argument that the ALJ failed to consider L.J.P. in a variety of settings, Defendant contends such an argument is misplaced because the ALJ relied not only on medical and examination records, but also educational records and testimony from Plaintiff about L.J.P.'s behavior at home and in public.  *Id*. at 16.  Finally Defendant argues that the ALJ's reliance on non-examining medical sources is not improper when that opinion is based on review of the complete case record.  *Id*. at 17.

**E.      Claimant's Medical and School Records**

1.      <u>Marcellus Family Medicine</u>

Since 2012, L.J.P. has treated with John A. Alley, M.D., of Marcellus Family Medicine. (T. 351-74, 385-89.)  Most of L.J.P.'s visits to Marcellus Family Medicine have been for routine well child visits, acute onset illnesses, and follow up appointments.  *Id*.  Dr. Alley also has treated L.J.P. for mild asthma.  (T. 360, 362.)

On October 2, 2012, Dr. Alley noted that L.J.P. is "generally well behaved, both at home and at school" and that her parents report she "has some difficulty with letters" and "difficulty focusing at times."  (T. 355.)  Dr. Alley's notes reflect Plaintiff's repeated concerns about L.J.P.'s ability to concentrate, and her desire to have L.J.P. tested for ADD, ADHD, learning disabilities, and anxiety, among other things.  (T. 355, 360, 362.)  L.J.P.'s parents brought these concerns to Dr. Alley in October, November, and December of 2012.  (T. 355, 360, 362.)  On December 3, 2012, specifically, Claimant's parents sought help from Dr. Alley in getting Claimant tested for the above mentioned impairments after claiming the School "won't do anything."  (T. 362.)  On June 4, 2013, Plaintiff again sought out Dr. Alley's assistance for a referral to a psychologist for Claimant.  (T. 372.)

2.      <u>St. Joseph's Hospital Health Center</u>

On June 26, 2013, at the referral of her School and Dr. Alley, Claimant received outpatient counselling from Joanna Tompkins, LMSW ("Tompkins") at St. Joseph's Hospital Health Center.  (T. 342-50.)  Upon examination, Tompkins noted Claimant had some articulation problems but was able to be understood, and was not hyperactive but was somewhat inattentive. (T. 344, 346.)  While Tompkins noted that Claimant experienced functional limitations over the

previous year due to emotional disturbance, she found L.J.P.'s functional problems were never more than mild and, therefore, did not constitute a serious emotional disturbance. (T. 348.)

Tompkins assigned Claimant a global assessment of functioning ("GAF") score of 64, which the ALJ notes is indicative of mild psychological symptoms. (T. 348, 26.) Tompkins reported "it is [her] impression that this parent is seeking diagnostic evaluation around ADHD symptoms at the prompting of school teachers, along with seeking to apply for SSI for this child." (T. 349.) In her assessment, Tompkins suggested language and learning disabilities may be triggering Claimant's avoidant and inattentive behavior at school. *Id.* Ultimately Tompkins issued a "provisional or working [diagnosis] of inattentive type of ADHD" anticipating that treatment would be short term with a focus on education, evaluation, and collaboration with the school and Claimant's parents. *Id.*

### 3. Consultative Examination

On August 19, 2013, Claimant was examined by Dr. Shapiro. (T. 375-84.) In the psychiatric portion of the evaluation, Dr. Shapiro found that Claimant seemed to suffer from a speech impediment, that she had trouble expressing herself, and that her "general level of comprehension appeared to be below average." (T. 377.) Dr. Shapiro estimated Claimant's intellectual functioning to be in a deficient range. *Id.* Dr. Shapiro opined that Claimant did not appear to have limitations in understanding and following simple instructions, performing simple tasks, or maintaining attention and concentration for tasks. (T. 377-78.) She did, however, find that Claimant had mild limitations in her ability to make appropriate decisions, deal with stress, and to relate to and interact well with others; mild-moderate limitations regarding her ability to learn new tasks; and moderate limitations in performing complex tasks. (T. 378.) Overall, Dr. Shapiro opined Claimant is mildly limited in her ability to behave in an age appropriate manner

and mild-moderately limited in her ability to perform age appropriate activities. *Id*. With treatment, Dr. Shapiro stated Claimant's prognosis was "good." *Id*.

In the intellectual portion of the evaluation, after administering a standardized intelligence measure (WISC-IV), Dr. Shapiro found Claimant to be functioning in the mild range of intellectual disability. (T. 381.) Specifically, Dr. Shapiro found the same limitations as were reported from the psychological portion of the examination, including mild limitations in Claimant's ability to make appropriate decisions, deal with stress, and to relate to and interact well with others; mild-moderate limitations regarding her ability to learn new tasks; and moderate limitations in performing complex tasks. (T. 383; *c.f.* T. 377-78.) Dr. Shapiro opined Claimant had no limitations in understanding and following simple instructions, performing simple tasks, or maintaining attention and concentration for tasks. (T. 377-78.)

Dr. Shapiro diagnosed Claimant with ODD and a mild intellectual disability, thus ruling out a diagnosis of ADHD. (T. 383-84.)

4.    SCSD

L.J.P.'s school record includes a multitude of evaluations, reports, behavioral assessments, and IEPs from teachers, school psychologists, physical therapists, occupational therapists, and speech therapists associated with the SCSD. (T. 256-88, 308-16, 320-26.)

Claimant's records from SCSD indicate Claimant received special education and related services such as physical, occupational, and speech therapy from January 2011, through February 2014. *Id*. An IEP from the 2013-2014 academic year shows Claimant was placed in a 12:1:1 classroom setting. [3] (T. 256-65.) An IEP from the 2014-2015 academic year shows

---

[3] A 12:1:1 classroom setting indicates a classroom in which there are no more than 12 students, and there is 1 teacher and 1 paraprofessional, such as a teacher's assistant.

Claimant has since been placed in a 15:1 classroom setting as she aged out of the 12:1:1 placement. (T. 308-16.) In February 2014, due to improvement, Claimant was dismissed from occupational and physical therapy. (T. 509, 520.) From the 2013-2014 academic year to the 2014-2015 academic year, Claimant's educational classification changed from "speech or language impairment" to "learning disabled." (T. 256-65, 308-16.) The IEP from the 2014-2015 academic year indicates that Claimant was still receiving speech/language therapy twice weekly. (T. 308.)

The educational record reflects that Claimant struggles with reading and mathematics. *Id*. At all times relevant to this case, Claimant has read at the kindergarten level despite reaching the third grade. *Id*. An IEP from the 2014-2015 academic year shows improvement in Claimant's ability to read, and development in her ability to understand mathematical concepts. (T. 311.) The same IEP, however, states that distractibility continues to slow Claimant's progress in reading and mathematics. *Id*.

In a teacher/school questionnaire from December 2014, Ms. Clark reported that Claimant has problems of an "obvious" or "very serious" nature in all areas of acquiring and using information. (T. 320.) Ms. Clark also reported Claimant has at least a slight problem in all areas of attending and completing tasks, finding she has a serious or very serious problem in several areas such as paying attention when spoken to directly, refocusing to task when necessary, waiting to take turns, and completing homework assignments. (T. 321.) Ms. Clark noted that Claimant "takes her learning seriously and enjoys coming to school." (T. 325.)

> 5. <u>Psychological and Medical Consultants</u>

After considering Claimant's medical and educational records, reviewing consultants, Dr. Blackwell, and Dr. Gauthier, (together, the "doctors") determined Claimant was not disabled.

(T. 98.)  In the domain of acquiring and using information, the doctors determined Claimant had a "marked" limitation.  (T. 96-97.[4])  In the five remaining domains, however, they determined Claimant had a "less than marked" limitation.  (T. 97-98.)  Though they determined that Claimant's impairment is severe, they determined it does not meet, medically equal, or functionally equal any of the impairments in the Listings.  (T. 96.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see also Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted).  Where evidence is deemed susceptible to more than one rational

---

[4]  The six domains of function include acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being.  20 C.F.R. §§ 416.926a(g)-(l).

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

An individual under the age of 18 is disabled, and thus eligible for SSI benefits, if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ."  *Id.* § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.9249(a)-(d); *accord Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos*

*v. Barnhart*, No. 02-CV-3127 (LAP/GWG), 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). First, the ALJ must consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). If so, the child is not disabled. *Id*.

Next, the ALJ must determine whether the child has a "medically determinable impairment[ ] that is severe." *Id*. § 416.924(c). If not, or if the impairment is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then the child is not disabled. *Id*.

Third, if the impairment is severe, the ALJ must determine whether the impairment meets or is medically or functionally equal to a disability in the Listings. *Id*. § 416.924(d). "An impairment meets the severity of a Listing if it matches the precise definition in the listings," while an impairment is "medically equivalent to a listed impairment if it is 'at least equal in severity and duration to the listed findings.'" *McCaskill v. Massanari*, 152 F. Supp. 2d 270, 273 (E.D.N.Y. 2001) (quoting 20 C.F.R. § 416.926(a)).

Functional limitations are evaluated in six "domains:" (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment will functionally equal a listed impairment if it results in a "marked" limitation in two of the domains or an "extreme" limitation in one domain. *Id*. § 416.926a(d). A "marked" limitation is found where the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(2)(i). "An 'extreme' limitation—which means 'more than marked' and is given only to the worst limitations—signifies the impairment 'interferes very seriously

with [the claimant's] ability to independently initiate, sustain, or complete activities.'" *Ramos*,

2003 WL 21032012, at *8 (quoting 20 C.F.R. § 416.926a(e)(3)(i)).

If the impairment meets (or is medically or functionally equal to) a disability in the

Listings and satisfies the twelve-month duration requirement, the claimant will be deemed

disabled. 20 C.F.R. § 416.924(d)(1). In essence, a child is disabled under the Social Security

Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v.*

*Zebley*, 493 U.S. 521, 529 (1990).

## III.  ANALYSIS

### A.  Whether Substantial Evidence Supports the ALJ's Determination that Claimant Has a Marked, but Not Extreme, Limitation in Acquiring and Using Information

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons set forth in Defendant's memorandum of law. (*See* Dkt. No. 16 at 5-12.) To

those reasons, the Court adds the following analysis.

As noted above, Plaintiff argues that the ALJ erred in her determination that Claimant's

impairments do not functionally meet the Listings. (Dkt. No. 14 at 19.) Specifically, Plaintiff

argues the record evidence reveals Claimant has at least a marked, if not extreme, limitation in

acquiring and using information. *Id.*

In assessing this domain, the ALJ must consider how well a child acquires or learns

information, and how well she can use the information she has learned. *Edmond v. Barnhart*,

No. 04-CV-6515 (CJS), 2006 WL 2769922, at *9 (W.D.N.Y. 2006). The Regulations provide

that a claimant of L.J.P.'s age:

> should be able to learn to read, write, and do math, and discuss
> history and science. You will need to use these skills in academic
> situations to demonstrate what you have learned; e.g., by reading
> about various subjects and producing oral and written projects,

solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

With respect to the domain of acquiring and using information, the ALJ determined, relying on both medical and educational evidence, that Claimant has a marked limitation. (T. 28.) The ALJ particularly relied on the opinions of Dr. Shapiro, Ms. Clark, and Dr. Blackwell, as well as the IEP from the 2014-2015 academic year. *Id*.; *see* T. 93-100, 308-17, 320-26, 375-84.

In her decision, the ALJ noted that in the 2013 consultative examination of Claimant, Dr. Shapiro opined that "[C]laimant has no limitations in the ability to understand and follow simple instructions and directions, and mild-to-moderate limitations in the ability to learn new tasks." (T. 28; *see* T. 377-78.) The ALJ recognized that an IEP from the 2013-2014 school year noted Claimant's ability to follow one-step instructions, as well as her slow progress with math skills, and that she had not yet acquired an understanding of addition. (T. 28; *see* T. 258-59.) Despite this IEP, a more recent IEP from the 2014-2015 school year shows Claimant's progress in both reading and mathematical skills. (T. 28; *see* T. 308-17.) The 2014-2015 IEP noted that Claimant was beginning to recognize and read some sight words, and was beginning to show an understanding of addition and subtraction. (T. 28; *see* T. 311.)

The ALJ also took specific note of the record opinions of Ms. Clark. (T. 28; *see* T. 320-26.) In her report, Ms. Clark opined that Claimant "has several 'very serious' problems in the domain of acquiring and using information." (T. 320-21.) As such, Plaintiff argues that the

ALJ's decision is contradicted by the record evidence, specifically by Ms. Clark's opinion, which the ALJ accorded significant weight.  (*See* Dkt. No. 14 at 19-22; T. 27.)

"When reviewing a child's impairments for functional equivalence, adjudicators must consider 'all of the relevant evidence,' and employ a 'whole child' approach.'" *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *3 (N.D.N.Y. Mar. 12, 2015). "'All of the relevant evidence' includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teacher, family members, or friends; the claimant's statement (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all setting[s] (i.e., at home, at school, and in the community)."  *Id*. at *3 n.8 (citing SSR 09-2P, 2009 WL 396032, at *11 (SSA Feb. 18, 2009)).  The "whole child" approach requires the ALJ to "to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain."  *Id*. at *3 (citing SSR 09-1P, 2009 WL 396031, at *2-3 (SSA Feb. 18, 2009)).

In this case, Plaintiff contends that ALJ failed to consider "all of the relevant evidence" and failed to employ the "whole child" approach.  Specifically, Plaintiff argues the ALJ did not give sufficient weight to Claimant's inability to read and do math.  (Dkt. No. 14 at 20-21.)  However, the ALJ's decision explicitly discussed Claimant's aptitude in these areas of study.  (T. 28.)  The ALJ specifically noted "the claimant's most recent IEP stated claimant was beginning to recognize and read some sight words and was beginning to understand the meaning of addition and subtraction."  (T. 28; *see* T. 311.)  Though the use of non-medical evidence

provided by a teacher is encouraged when determining a child's functioning, the ALJ must consider such evidence in light of the entire record. *Edmond*, 2006 WL 2769922, at *10; *Schaal*, 134 F.3d at 501. "It is well established, moreover, that a reviewing court must consider the record as a whole, not seize upon 'a specific quantum' of evidence that, taken in isolation, might sustain the administrative decision." *Grey*, 721 F.2d at 46.

Here, the ALJ considered Ms. Clark's opinions, and accorded them significant weight, but she also considered Dr. Shapiro's examination of Claimant, Claimant's IEPs, and the consultative opinions from Dr. Blackwell in making a function determination with regard to the domain of acquiring and using information. (T. 27-28; *see* T. 93-100, 256-88, 308-17, 375-84.) Specifically, though Ms. Clark opined that Claimant has problems of an "obvious" or "very serious" nature in acquiring and using information, Dr. Shapiro found Claimant "appears to have no limitations in understanding and following simple instructions and directions . . . no limitations performing simple tasks . . . [and] no limitations maintaining attention and concentrations for tasks." (T. 320, 377-78.) Though Dr. Shapiro did find Claimant has mild-moderate limitations regarding her ability to learn new tasks, a comparison of Claimant's IEPs from 2013-2014 to 2014-2015 shows Claimant's progress learning to read and understand mathematical concepts, such as addition and subtraction. (T. 378, 256-65, 308-317.) Furthermore, after reviewing Claimant's record, Dr. Blackwell opined Claimant has a marked limitation in attending and completing tasks. (T. at 96-97.) As such, the ALJ's decision was supported by substantial evidence even though her determination did not align with the opinions of Ms. Clark.

Plaintiff also contends the ALJ failed to properly use the "whole child" approach mandated by 20 C.F.R. § 416.926a(e) and SSR 09-01p. (Dkt. No. 14 at 22-23.) As set forth

above, this requires an ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine to what degree such impairment limits that child's ability to function age-appropriately in each domain. SSR 09-01p, 2009 WL 396031, at *1-2.

Specifically, Plaintiff takes issue with the ALJ's use of the "whole child" approach, highlighting that the ALJ failed to discuss a series of questions as set forth in SSR 09-1p. (Dkt. No. 14 at 22.) SSR 09-1p, however, provides that an ALJ is not required to discuss all considerations provided therein. SSR 09-1p, 2009 WL 396031, at *3. Instead, an ALJ needs "only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." *Id*.

Here, where the ALJ discussed evidence from medical, consultative examinations, and school records and considered Claimant's functioning in a variety of settings, she assessed the whole child. Plaintiff is correct that the ALJ considered L.J.P. in several one-on-one settings, however, the ALJ's inquiry did not stop there. Medical records from Dr. Shapiro, Dr. Alley, and Tompkins, do report on Claimant's behavior in a one-on-one setting. (T. at 375-84, 385-89, 351-74, 342-50.) School records, however, describe Claimant in large and small group settings. Claimant's 2013-2014 IEP describes L.J.P.'s behavior and functioning in a classroom setting of roughly twelve students, and her 2014-2015 IEP describes Claimant's functioning in a classroom of around fifteen students. Additionally, the ALJ considered Plaintiff's testimony which described Claimant's activity and function at home and in public. (*See* T. 49-92.)

The Court concludes that the ALJ's determination that Claimant has a marked, but not extreme, limitation in acquiring and using information, is supported by substantial evidence,

including the evidence discussed above and the opinions of medical consultants, Dr. Blackwell and Dr. Gauthier.

> **B.** **Whether Substantial Evidence Supports the ALJ's Determination that Claimant Has a Less Than Marked Limitation in Attending and Completing Tasks**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memorandum of law. (*See* Dkt. No. 16 at 14-18.) To those reasons, the Court adds the following analysis.

In this domain, the ALJ is required to consider how well the child is able to focus and maintain her attention and how well she begins, carries through, and completes her activities. 20 C.F.R. § 416.926a(h). The ALJ is also required to consider the pace at which the child performs her activities and the ease with which she changes them. *Id.* School-age children—such as L.J.P.—should be able to change routines without distraction, stay on task when appropriate, and be able to complete a transition task without extra reminders and accommodation. *Id.* § 416.926a(h)(2)(iv).

Plaintiff argues that in finding that L.J.P. had less than marked limitations in this domain, the ALJ ignored evidence establishing a marked limitation. (Dkt. No. 14 at 17, 21.) Specifically, Plaintiff claims that the ALJ failed to adequately rely on Ms. Clark's opinion. *Id.* at 21-22; *referring to* T. 320-26. Plaintiff argues the ALJ erred in determining that L.J.P. had a less than marked limitation in the domain of attending and completing tasks when Ms. Clark, whose opinion the ALJ afforded significant weight, opined L.J.P. had several "obvious" and "serious" problems in this domain. *Id.*; *see* T. 321-22.

In her decision, the ALJ discussed Ms. Clark's opinion that Claimant has some problems functioning in the domain of attending and completing tasks. (T. 29; *see* T. 321-22.) Ms. Clark

opined that L.J.P. generally has "obvious" and some "serious" problems in this domain. *Id.* However, a teacher's assessment of "serious" problems in the domain of attending and completing tasks may not indicate "marked" limitations in light of other medical evidence in the record. *See, e.g.*, *Frye ex rel. A.O. v. Comm'r of Soc. Sec.*, No. 5:10-CV-98 (GTS/ATB), 2010 WL 6426346, at *11-12 (N.D.N.Y. Nov. 12, 2010) (upholding the ALJ's determination that Claimant had a less than marked limitation attending and completing tasks, despite teacher and school opinions that the claimant was easily distracted by his surroundings, has trouble listening to and following teacher instructions, and was disruptive in class, because the finding was supported by substantial medical and educational evidence); *Hudson ex rel. S.G. v. Astrue*, No. 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *8-9 (N.D.N.Y. Apr. 30, 2009) (upholding the ALJ's finding that the claimant's limitations in attending and completing tasks were less than marked, despite observations about some "serious" problems in related areas by teachers, because the finding was supported by substantial evidence, including the opinion of the treating psychiatrist that the claimant's attention span was "fine" on the current medication). In L.J.P.'s case, the ALJ considered the evidence provided by Ms. Clark in light of the entire record, including evidence provided by Dr. Shapiro, Claimant's mother, and Dr. Blackwell. (*See* T. 49-92, 93-100, 375-84.) The ALJ relied on the results of a mental status examination administered by Dr. Shapiro which revealed the Claimant had intact attention and concentration skills, and mildly impaired memory skills. (T. 29; 377-78.) Dr. Shapiro also opined that Claimant has no limitations in the ability to perform simple tasks, and that she has moderate limitations in the ability to perform complex tasks. (T. at 377-78.) The ALJ further relied on Dr. Blackwell's opinion that Claimant has a less than marked limitation in this domain. (T. 29, 97.)

Finally, Plaintiff argues that the ALJ failed to consider L.J.P. in a variety of settings. (Dkt. No. 14 at 16.)  To be sure, an ALJ must consider a child's ability to sustain attention in a variety of settings.  SSR 09-4p, 2009 WL 396033 (Feb. 18, 2009).  Here, the Court finds Plaintiff's arguments unfounded as the ALJ did consider L.J.P. in a variety of settings.  As discussed above, the ALJ relied on medical examinations, school records, and the testimony of Claimant's mother, all of which describe and provide information about Claimant's behavior in a multitude of settings including one-on-one, at home, and in school.  (T. 29; *referring to* T. 49-92, 93-100, 320-26, 375-84, 505-17.)  Ms. Clark's opinion, for example, described Claimant in a classroom setting, where there were as many as fifteen other students.  (T. 320-26.) Additionally, Plaintiff's testimony from the hearing before the ALJ describes Claimant's function and behavior at home and in public.  (T. 49-92.)  Plaintiff testified that at home Claimant does the chores asked of her, and generally finishes her tasks, though she sometimes needs to be asked multiple times.  (T. 59.)  Plaintiff also testified that L.J.P. is "an active kid," that she loves the library, and she thinks everyone is her friend.  (T. 61, 78.)   Finally, Dr. Shapiro, Dr. Alley, and Tompkins all examined Claimant in one-on-one situations.  (*See* T. 342-50, 351-74, 375-84, 385-89.)  Given such a discussion in the ALJ's decision and the evidence on which the ALJ relied, the Court finds Plaintiff's argument without merit.

The Court concludes that the ALJ's determination, that Claimant has a less than marked limitation in attending and completing tasks.  For the abovementioned reasons, the Court concludes that the ALJ's determination was supported by substantial evidence with respect to both the domain of acquiring and using information, and the domain of attending and completing tasks.

**ACCORDINGLY**, based on the finding above, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Claimant disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: August 16, 2017
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge